FILED
2014 Jun-16  AM 09:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BOZORGMEHR POUYEH,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-12-BE-4198-S** |
| | ] | |
| **UNIVERSITY OF** | ] | |
| **ALABAMA/DEPARTMENT OF** | ] | |
| **OPHTHAMOLOGY,** | ] | |
| | ] | |
| **Defendant.** | | |

**MEMORANDUM OPINION**

This matter, asserting employment discrimination, "education discrimination," and Constitutional violations brought pursuant to § 1983, is before the court on "Individual Defendants' Motion to Dismiss or for Partial Summary Judgment on the Fourth Amended Complaint" (doc. 69) and "Defendant the Board of Trustees' Motion to Dismiss Fourth Amended Complaint" (doc. 73). These motions have received thorough briefing. For the reasons stated in this Memorandum Opinion, the court will GRANT both motions and will DISMISS WITH PREJUDICE the Fourth Amended Complaint in its entirety.

**I.  PROCEDURAL HISTORY**

Although the *pro se* Plaintiff has filed numerous motions and amended complaints that the Defendants have challenged, the operative complaint currently before the court is the Fourth Amended Complaint (doc. 67), filed October 9, 2013. It is a 30-page document against the Board of Trustees of the University of Alabama System and twenty individual Defendants, some of whom are members of the Board and others of whom hold positions at UAB or in the

University of Alabama system.

The twenty individual Defendants filed their motion to dismiss or alternative motion for partial summary judgment (doc. 69), which incorporated by reference their prior motion to dismiss (docs. 48 & 69-2) and attached the affidavit of Defendant Dr. Lisa Willett (doc. 69-1). The court struck Dr. Willett's affidavit, stating that it would address the motion only as a motion to dismiss without consideration of materials beyond the facts alleged or referenced in the Fourth Amended Complaint.  (Doc. 70).  The Board of Trustees also filed its motion to dismiss (doc. 3), which is also under submission.

## II.  FACTS

The Fourth Amended Complaint contains various allegations of discrimination against the Board and individual Defendants based on their failure to accept Dr. Pouyeh into the residency program of the UAB School of Ophthalmology and the preliminary internal medicine internship associated with that residency.  He asserts national origin discrimination against the Board in violation of Title VII (Count One), § 1981 (Count Two), and Title VI (Count  Three). Counts Four through Seven, brought under § 1983, allege that various individual Defendants established or reviewed policies, or acted to violate Constitutional rights such as substantive Due Process rights and Equal Protection rights, as well as federal statutory rights under Title VI and Title VII, etc.

To support these allegations, Dr. Pouyeh explains that in 2010, 2011, and 2012, he applied for a three-year residency position at the UAB School of Ophthalmology, and for the prerequisite one-year preliminary internship with the UAB Internal Medicine Department.  Dr. Pouyeh asserts that he was qualified for the positions because, among other facts, he graduated

from Tehran University of Medical Sciences, "ranked #1 for the past decade by the Ministry of Health in Iran," where he was a "top student."  Dr. Pouyeh, an Iranian citizen, is a legal permanent resident of the United States currently residing in Miami-Dade County, Florida.

Dr. Pouyeh never received an interview and was never accepted into the residency or internship program at UAB.  On April 30, 2012, he filed an EEOC charge stating that he was not offered an interview for a residency on October 29, 2011 because he had not graduated from a medical school in the United States or Canada.  (Doc. 67, at 23).  Dr. Pouyeh does not allege that he ever amended this charge to address the 2012 application.  On September 26, 2012, Dr. Pouyeh received the EEOC right to sue letter advising him that the EEOC was closing its file and that he had 90 days to file suit.  (Doc. 67, at 25).  He filed his original complaint on December 27, 2012.

To support his claim of national origin discrimination and Constitutional violations, Dr. Pouyeh references and attaches to his complaint a printout from the website of the UAB School of Medicine Department of Ophthalmology.  (Doc. 67, Ex. D).  That document reads in part: "The UAB Ophthalmology Residency is a full-accredited three-year training program.  Five residents are accepted each year through the Ophthalmology Residency Matching Program. Candidates must be graduates of a class 'A' medical school approved by either the American Medical Association or the Canadian Medical Association.  An approved internship is a prerequisite."

### III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.  The motion to dismiss in the instant case attacks the sufficiency of the Fourth Amended Complaint

3

filed by a *pro se* Plaintiff.  Although the court is required to show leniency to a *pro se* plaintiff's

pleadings, his complaint is still "subject to the relevant law and rules of court, including the

Federal Rules of Civil Procedure."  *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir. 1989).  *Pro*

*se* complaints must "comply with the procedural rules that govern pleadings."  *Beckwith v.*

*Bellsouth Telecomms. Inc.*, 146 Fed. App'x 368, 371 (11th Cir. 2005).

      Generally, the Federal Rules of Civil Procedure require only that the complaint provide

"'a short and plain statement of the claim' that will give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47

(1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement,

but Rule 8 generally does not require "detailed factual allegations."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more

than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal* 556 U.S.

662, 678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the

elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are

based merely upon "labels or conclusions" or "naked assertions" without supporting factual

allegations.  *Twombly*, 550 U.S. at 555, 557.

      The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).

To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

at 678.

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]," or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.   The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

Thus, under prong one, the court determines the factual allegations that are well-pled and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pled facts.  That task  is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." Id.  If the court determines that well-pled facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

## IV.  DISCUSSION

### A.  Title VII Claims (Count One)

Although the Defendants did not raise this point, the court first notes the apparent absence of  the condition precedent to the filing of a Title VII claim:  the exhaustion of administrative remedies.  *See McDonnell Douglas Corp. v. Green,* 4 U.S. 792, 798 (1973) (using "jurisdictional prerequisite" language); *see also Zipes v. TransWorld Airlines, Inc.,* 455 U.S. 385, 393 & 398 (1982) (finding that the requirement for filing a timely charge is similar to a statute of limitations "subject to waiver, estoppel, and equitable tolling" as opposed to an absolute jurisdictional prerequisite).  To exhaust his administrative remedies, Dr. Pouyeh must have filed

an EEOC charge within 180 days of *each* alleged unlawful employment actions.  *See* 42 U.S.C. §

2000e-5(e) (requiring that a charge be filed 180 days "after the alleged unlawful employment

practice occurred"); *see also* 29 C.F.R. § 1601.12(b) (allowing a charge to be amended to cure

omissions and clarify and amplify allegations, but also providing that "an amendment alleging

additional acts constituting unlawful employment practices not directly related to or growing out

of the subject matter of the original charge will be permitted only where at the date of the

amendment the allegation could have been timely filed as a separate charge.").  Dr. Pouyeh does

not allege that he filed an EEOC charge as to the 2010 or 2012 denials of his application for the

residency program, nor does the record reflect that he amended his EEOC charge to include the

2010 or 2012 denials. Therefore, he has not met the condition precedent to bring a Title VII

claim in this case for those two distinct alleged violations, and his Title VII claims for those years

are barred.

Dr. Pouyeh does plead that he filed an EEOC charge challenging his denial of an

interview on October 29, 2011, and he attached a copy of that EEOC charge as Exhibit A to his

complaint.  That EEOC charge is dated April 30, 2012 and signed by Dr. Pouyeh.  Assuming it

was filed on or subsequent to the date he signed it, the EEOC charge was not filed within 180

days of the alleged violation, which would have expired on April 26, 2012.  Thus, the EEOC

charge was untimely and did not meet the condition precedent for the 20 alleged violation, either.

Thus, none of his Title VII allegations is properly before the court, and Count One must be

DISMISSED.

The court will address an alternative ground for dismissal of the Title VII claims in its

discussion of the § 1981 claims because both claims apply the same elements.

**B.  Title VII and § 1981 - Counts One & Two**

Unlike his Title VII claims, the Plaintiff does not have to exhaust administrative remedies to assert a § 1981 claim, which he asserts in Count Two.  "Section 1981 prohibits intentional *race* discrimination in the making and enforcement of public and private contracts, including employment contracts."  *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir. 1999) (emphasis supplied).  It provides as follows:

> All persons ... shall have the right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ....

42 U.S.C § 1981(a).

In addressing the parameters of § 1981, the Supreme Court of the United States has distinguished between claims of discrimination based on national origin, which do *not* fall within the protections of § 1981, and those based on race, which do.  *See St. Francis College v. Al-Khazraji,* 481 U.S. 604, 613 (1987).  Similarly, courts of appeal that have addressed § 1981 have repeatedly held that claims of discrimination based on national origin, where they are distinct from those based on race, do not fall within the protection of § 1981.  *See, e.g., Keh v. Americus & Sumter Cnty. Hospital,* 377 Fed. App'x 861, *1-2 (11th Cir. 2010) (affirming dismissal of § 1981 claim that the plaintiff conspired to terminate her ability to make and enter contracts due to her national origin); *Tippie v. Spacelabs Med. Inc.,* 180 Fed. App'x 51, *4 (11th Cir. 2006) (explaining that "[b]y its very terms, § 1981 applies to claims of discrimination based on race, not national origin," and noting that the plaintiff's "only alleged evidence of discrimination was based on the fact that she is not a native of Latin America ... a claim based on her national origin,

not her race"); *Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir. 1998) (stating "It is also settled

that Section 1981 does not prohibit discrimination on the basis of ... national origin...."); *Bennun*

*v. Rutgers State Univ.,* 941 F.2d 154, 172 (3d Cir. 1991) (stating that, under *St. Francis College,*

a claim based solely on a plaintiff's national origin would be insufficient for a § 1981claim);

*Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387, n. 7 (10th Cir. 1991) (stating that

"actually § 1981 does not outlaw national origin discrimination per se, only discrimination on the

basis of race").

      Dr. Pouyeh does not allege that UAB discriminated against him based on his *race*;

instead, he asserts discrimination based on national origin.  However, his reliance on the UAB

website does not even support his allegation that UAB discriminated against him based on his

national origin.  Instead, the website establishes that any "discrimination" against Dr. Pouyeh

was based on the medical school from which he graduated—not his national origin.  To be

considered for the residency program, "[c]andidates must be graduates of class 'A' medical

schools approved by wither the [AMA] or [CMA]."  *See* Doc. 67, at 30, Ex. D).  Neither Title

VII nor § 1981 prohibits discrimination based on the medical school from which one graduated.

The requirement that a candidate graduate from a class "A" AMA- or CMA-approved medical

school excludes United States citizens as well as nationals of other countries who graduated from

non-class "A" medical schools and medical schools not approved by the AMA or CMA.

      Further, to establish a *prima facie* case in a failure to select/hire suit under either § 1981 if

based on race, or under Title VII[1], and thus raise an inference of discriminatory intent, a plaintiff

---

[1] When addressing claims of race discrimination based on circumstantial evidence, courts apply the same
analytical framework to claims brought under § 1981 as those brought under Title VII.  *Rice-Lamar v. City of Fort
Lauderdale*, 232 F.3d 836, 843 n. 11  (11th Cir. 2000).

must demonstrate that "(i) he [ ] belonged to a protected class; (ii) he [ ] was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he [ ] was rejected; and (iv) the position was filled with an individual outside the protected class." *See Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 768 (11th Cir. 2005).  "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, it must provide 'enough factual matter (taken as true) to suggest' intentional ... discrimination." *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008) (citing *Swiekiewicz v. Sorema N.A.,* 534 U.S. 506, 5 (2002), and quoting *Twombly,* 550 U.S. at 556).  In the instant case, Dr. Pouyeh's pleading is not factually plausible as to the Title VII and § 1981 claims because, while Dr. Pouyeh pleads that he is "qualified," his pleading's reliance on the UAB website establishes instead that he did not meet the basic requirement to be qualified: he did not graduate from a class "A" medical school that was approved by the AMA or CMA.  Thus, he fails to plead a plausible claim for relief under either Title VII or § 1981, and Counts One and Two must be DISMISSED.

### C.  Title VI - Count Three

Title VI of the Civil Rights Act of 1964 provides "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d (1964).  Title VI proscribes only classifications based on race, color, or national origin that would violate "' the Equal Protection Clause of the Fifth Amendment.'" *Alexander v. Sandoval,* 523 U.S. 275, 280 (2001) (quoting *Regents of Univ. of*

*Cal. v. Bakke,* 537 U.S. 265, 287 (1978)).  The statute severely limits the circumstances under which a plaintiff may bring a private action under Title VI to challenge an employment practice, stating that Title VI only applies to "any employment practice of any employer ... where a primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d.  Congress enacted this limitation of the statute to allay its "concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII."  *Johnson v. Transp. Agency, Santa Clara Cnty., Cal.,* 480 U.S. 616, 628 n. 6 (1987).

In Count Three, Dr. Pouyeh alleges "education discrimination" and that UAB "receives Federal financial assistance."  (Doc. 67, at 10).  Dr. Pouyeh uses the same allegations of "educational discrimination" that he used to plead "employment discrimination," but his allegations fall short of the requirements of Title VI.  In Title VII, Congress has established framework with administrative prerequisites for employment discrimination cases, and to ensure that Title VI could not be used as an end-run around that framework, Congress statutorily limited the application of Title VI to a narrow set of employment discrimination cases: cases where the primary objective of the federal funding given is to provide employment.  In his Fourth Amended Complaint, Dr. Pouyeh has not alleged facts bringing him within the purview of Title VI.  The court FINDS that the Board's motion is due to be GRANTED as to the claims in Count III, and those claims will be DISMISSED.

Because no claims remain against UAB or its Board, the court finds that the Board's motion to dismiss is due to be GRANTED in its entirety and that those Defendants are due to be DISMISSED as parties.  Further, because Dr. Pouyeh has had four opportunities to plead his

10

case, the Fourth Amended Complaint as to those Defendants will be DISMISSED WITH PREJUDICE.

### D.  § 1983 Claims against the Individual Defendants - Counts Four through Seven

Dr. Pouyeh next turns his attention to the individual Defendants and alleges in separate counts that their actions deprived him of "equal benefit of laws (Title VI and Title VII) and his Constitutional Rights (employment, education, obtaining license to pursue his profession in the United States, appropriate social and economic status, property and marriage)."  (Doc. 67, 72, 85, 91, 101).  He also asserts that he "has a federally protected as well as constitutionally substantive Due Process right to employment, education, obtaining license to continue his profession in the United States, appropriate socioeconomic status, property and marriage." (Doc. 67 ¶ ¶ 77, 90, 99).  In Count IV he alleges that the individual Board members as the "policy-rule-makers" are responsible for the "policy and practice" that "excluded Iranian immigrant doctors from Ophthalmology Residency for many years."  (Doc. 67, ¶ 63, 66, 70).  Similarly, he charges the Vice Chancellor for Academic and Student Affairs (Count V), the Director of Ophthalmology Residency Program (Count VI), and Director of Internal Medicine Residency Program (Count VII) with implementing the discriminatory policy (Count V) or with being directly involved and responsible for the selection process (Counts VI & VII).

Again, the court notes that the policy Dr. Pouyeh points to as responsible for the systematic discrimination against Iranian immigrant doctors is the policy that requires candidates for the Ophthalmology Residency Program to have graduated from a class "A" medical school approved by the AMA or CMA.  On its face, the policy equally excludes United States citizens as well as foreign nationals who did not graduate from class "A" AMA- or CMA- approved

medical schools.  Such a requirement ensures that the *five* candidates selected each year for the residency program will all have received a similar high-level of medical training based on the standards required for class "A" AMA and CMA approval of medical schools.  These high standards for admission to a post-graduate residency program do not violate any Constitutional prohibitions.  Dr. Pouyeh has no fundamental or Constitutional right to a post-graduate school education.  *See Plylar v. Doe,* 457 U.S. 202 (1982).  Further, "the right to practice a particular profession is not a fundamental one."  *Locke v. Shore,* 634 F.3d 85, 95-96 (11th Cir. 2011). Thus, rational basis review applies to the standards challenged.  *Id.*  Even if somehow these standards could be viewed as infringing upon a Constitutional right or potentially denying Dr. Pouyeh Equal Protection[2] or Due Process, those standards are rationally related to the legitimate state interests of ensuring that only the highest qualified medical school graduates are accepted into the Ophthalmology Residency program, and thus, protecting the health and safety of UAB patients and the high reputation of the UAB medical system.

   Dr. Pouyeh claims that the Opthalmology School admissions policy also violates Title VII and Title VI.  The same analysis applied directly to those claims against UAB and the Board

---

   [2] Dr. Pouyeh's Fourth Amended Complaint does not use the term "equal protection," and the Defendants did not analyze and respond to an equal protection claim.  The Fourth Amended Complaint does, however, allege that "Plaintiff has been deprived of equal benefit of laws (Title VII and Title VI) and his Constitutional Rights (employment, education, obtaining license to pursue his profession in the United States, appropriate social and economic status, property, and marriage."  (Doc. 67, at 15 ¶ 72, at 17 ¶ 85, and at 18 ¶ 92, at 19 ¶ 101). To the extent, if any, that Dr. Pouyeh has attempted to assert an equal protection claim, he must define the class allegedly denied equal protection.  If he is arguing that the class denied equal protection is comprised of Iranian nationals, the UAB website, on which his Fourth Amended Complaint relies, defeats this claim.  Even if he were attempting to allege that the class warranting Constitutional protection is comprised of those doctors graduating from medical schools that were not AMA- or CMA-approved, no precedent exists that such a class qualifies as a "suspect class." The court will sustain a classification if it is "rationally related to a legitimate state interest."  *See City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985).  The court finds that Dr. Pouyeh could make no plausible claim that the Ophthalmology School's  admissions standards are not rationally related to the legitimate interests of protecting the health and safety of UAB patients and safeguarding the high reputation of the UAB medical system.

applies to the § 1983 claims.  *See Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008)

(stating that the analysis "under § 1983 is identical to the analysis under Title VII where the facts

on which the claims rely are the same").  Thus, Dr. Pouyeh's § 1983 claims against the individual

Defendants for employment discrimination likewise fail to state a claim.

       Further, Dr. Pouyeh claims that the admissions policy deprived him of his Constitutional

right to obtain a license to practice medicine in the United States.  No such Constitutional *right

to obtain* a professional license exists; a professional license is a privilege, earned upon meeting

the licensure requirements of the profession.  *See Locke,* 634 F.3d at 95-96.  Likewise,

"appropriate social and economic status" is not a Constitutional right.  While the Constitution

does provide that property rights—once acquired—cannot be "deprive[d]" by government action

"without due process of law," U.S. Const. amend. XIV, § 1, the Constitution does not ensure that

one can *acquire* property or professional licenses.  *See U.S. v. Shotts,* 145 F.3d 1289, 1295  n. 9

(11th Cir. 1998).  Similarly, although the Constitution does protect the right to marry, *see Loving

v. Virginia,* 388 U.S. 1, 12 (1967), Dr. Pouyeh provides no explanation of how the UAB policy,

followed by the individual Defendants, affects his right to marry.

       Even if Dr. Pouyeh somehow stated a cause of action for violation of recognized

Constitutional rights, the individual Defendants would be entitled to qualified immunity.

Qualified immunity protects government employees from liability unless they violate a federal

statutory or Constitutional right that was clearly established at the time of the alleged violation.

*See Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Amnesty Int'l, USA v. Battle,* 559 F.3d 1170,

1184 (11th Cir. 2009).   "The purpose of qualified immunity is to allow government officials to

carry out their discretionary duties without fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations omitted).  Because qualified immunity is a defense not only from liability but also from suit, a court should "ascertain the validity of the qualified immunity defense as early in the lawsuit as possible." *Lee,* 284 F.3d at 1194 (internal quotation omitted).

Dr. Pouyeh has failed to demonstrate a clearly established Constitutional right to be accepted into an ophthalmology residency program.  Nor has he established that setting high academic standards violates Constitutional protections.  The law is to the contrary.  *See Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 225-26 (1985); *Bd. of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 89-90 (1978) (recognizing that purely academic decisions should not be disturbed by courts).  Further, the Eleventh Circuit upheld the dismissal of a lawsuit brought by an applicant denied admission to a medical school.  *See Bowers v. Bd. of Regents of the Univ. Sys. of Ga.,* 509 Fed. App'x 906, *2 & *5 (11th Cir. 2013) (per curiam) (affirming a dismissal of a § 1983 claim alleging a denial of an applicant's substantive due process rights based on a refusal to consider his 2010 admissions application because his MCAT scores were too old).  These cases support a finding of no clearly established Constitutional violation in this case and require the court to recognize that the individual Defendants are entitled to qualified immunity.

For these reasons, the motion to dismiss by the individual Defendants will be GRANTED, and those claims will be DISMISSED.  Further, because Dr. Pouyeh has had four opportunities to plead his case, the claims in the Fourth Amended Complaint asserted against those individual Defendants will be DISMISSED WITH PREJUDICE.

Because no further counts or Defendants remain, the Fourth Amended Complaint will be

DISMISSED in its entirety.  Further, as previously noted, because Dr. Pouyeh has made four attempts to plead a cognizable claim, the Fourth Amended Complaint and all claims in it will be dismissed WITH PREJUDICE.

Dated this 16th day of June, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE